IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:24-CV-00288-KDB-SCR

| | |
|---|---|
| KENNETH L. MCELWEE,<br><br>Plaintiff,<br><br>v.<br><br>ALDERSGATE LIFE PLAN SERVICES, INC, ET AL.,<br><br>Defendants. | **ORDER** |

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss (Doc. No. 20). In this action, pro se attorney Plaintiff Kenneth McElwee, a former resident of Defendant Aldersgate United Methodist Retirement Community, Inc. ("AUMRC"), alleges that Defendants engaged in federal racketeering and unlawful conduct under North Carolina law by falsely representing to him and others whether their large, partially refundable "entrance fees" would be escrowed. As discussed in detail below, while Mr. McElwee has indeed made serious allegations of commercial misconduct, the facts he has alleged are insufficient to support his RICO claim, which stands as the sole basis for federal jurisdiction. Therefore, after carefully considering this motion and the parties' briefs, the Court will **GRANT** the motion to dismiss Plaintiff's RICO claim and decline to take jurisdiction over his state law claims, which the Court will dismiss without prejudice, having not considered their merits.

### I.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

1

However, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. See Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl.*, 550 U.S. at 570; *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Court of Appeals of Maryland*, 566 U.S. 30 (2012). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the Plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Construing the facts in this manner, a complaint must only contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotations omitted). Thus, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

A pro se plaintiff's complaint must be held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, this liberal pleading standard does not apply when, as here, the litigant is a licensed attorney. (Doc. No. 1 at 1, 49-50); *Spence v. United States Dep't of Veterans Affs.*, 109 F.4th 531, 538 (D.C. Cir. 2024)

(noting that this conclusion is in unanimous consensus with the other circuits that have addressed the question).[1]

## II. FACTS AND PROCEDURAL HISTORY

Plaintiff, a North Carolina resident, is a former resident of AUMRC, a licensed continuing care and retirement community ("CCRC") in Charlotte, North Carolina. (Doc. No. 1 at 3). Since approximately April 2016, AUMRC has been a subsidiary of Aldersgate Life Plan Services, Inc. ("Aldersgate"), which was created for the express purpose of managing AUMRC. *Id.* at 14, 16. At all relevant times, Aldersgate owned 100% of AUMRC's assets, and Aldersgate's 2021 restated articles of incorporation state that Aldersgate will "hold, manage, administer, use, and invest . . . money or property [for the benefit of AUMRC]." *Id.* at 16. Aldersgate charges AUMRC 5% of its gross annual revenue as compensation. *Id.*

Plaintiff moved into the retirement community in 2022. *Id.* at 26. Upon joining, he was required to enter into a resident agreement and pay an entrance fee of $350,895.00. *Id.* at 24. He alleges that between 2016, when Aldersgate was created, and 2024, when he moved out of the

---

[1] *See Andrews v. Columbia Gas Transmission Corp.*, 544 F.3d 618, 633 (6th Cir. 2008) ("We cannot accord [Plaintiff] the advantage of the liberal construction of his complaint normally given pro se litigants because he is a licensed attorney."); *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001) ("While we are generally obliged to construe pro se pleadings liberally, we decline to do so here because [Plaintiff] is a licensed attorney.") (cleaned up); *Godlove v. Bamberger, Foreman, Oswald, & Hahn,* 903 F.2d 1145, 1148 (7th Cir. 1990) ("Ordinarily, we treat the efforts of [pro se] applicants gently, but a [pro se] lawyer is entitled to no special consideration."); *Gordon v. Gutierrez*, No. 1:06CV861, 2006 WL 3760134, at *1 (E.D. Va. Dec. 14, 2006), *aff'd*, 250 F. App'x 561 (4th Cir. 2007) ("Plaintiff represents that she is an attorney, a law school graduate, and a member a neighboring state's bar. As such, she is not entitled to the liberal construction of pleadings ordinarily afforded [pro se] litigants.").

retirement community, he and an unknown number of other prospective residents were induced into executing their resident agreements by AUMRC staff members telling them that the refundable portion of their entrance fees would be escrowed, when the fees, in fact, were not. *Id.* at 24-26. Specifically with respect to himself, Plaintiff alleges that during a telephone conversation on July 1, 2022, he asked Kourtney Carter, an AUMRC salesperson, whether the refundable portion of his entrance fee would be escrowed. *Id.* at 24. She told him that it would be. *Id.* On July 12, 2022, Plaintiff was accepted for residency and wired a ten percent down payment to AUMRC. *Id.* at 25.

When a person applies for residence at a CCRC in North Carolina, they are provided a mandatory disclosure form under North Carolina law. G.S. § 58-64-20. G.S. § 58-64-20(a)(15) states that the disclosure form is required to contain "[a]ny other material information concerning the facility or the provider which, if omitted, would lead a reasonable person not to enter into this contract." *Id.* The disclosure form was first emailed to Plaintiff, and when he couldn't open it, was sent via U.S. mail. (Doc. No. 1 at 24). Plaintiff alleges that the disclosure form provided to him does not contain various information he contends is material, including how Aldersgate managed the money brought in from entrance fees (particularly whether or how the refundable portion of an entrance fee would be escrowed), that AUMRC is managed by Aldersgate for a fee, and that Aldersgate and AUMRC have an identical CEO and board of directors. (Doc. No. 1 at 19-20).

On July 23, 2022, Plaintiff called Ms. Carter twice and emailed her three times to ask how the entrance fees would be invested. *Id.* at 25. Later that day, he called and spoke with Brittany Clinkscales, Ms. Carter's sales associate. *Id.* at 25-26. Ms. Clinkscales told Plaintiff that any escrowed funds would be "conservatively invested," but that he would need to "ask one of the finance guys" for more details. *Id.* at 26. Plaintiff does not state whether he followed up with the

4

finance team or not. On August 18, 2022, Ms. Clinkscales emailed both the resident agreement and state-mandated disclosure statement to Plaintiff. *Id.* Plaintiff reviewed both documents "several times" and returned via email both a written acknowledgment of the disclosure statement and the executed resident agreement. *Id.* Plaintiff then wired the balance of the entrance fee to AUMRC and moved in on September 14, 2022. *Id.*

At a January 11, 2024, semi-annual business meeting[2] attended by both Defendant Suzanne Pugh and North Carolina Deputy Commissioner of Insurance Jeff Trendel, several residents "bitterly complained" that AUMRC had represented that "the refundable portions of their entrance fees would be escrowed for their protection." *Id.* In response, Plaintiff alleges Defendant Pugh stated she was "not doubting anyone's word [as it relates to the misrepresentation of the refundable portion of residents' entrance fees being escrowed]," and that when she "first heard that the sales department was representing to prospective residents that their entrance fees would be held 'in trust' or 'escrowed' her 'antennae went up.'" *Id.* at 26-27. She noted that she then "worked with the [AUMRC] Executive Director" to retrain staff to not make that representation in the future. *Id.* Plaintiff later moved out of his residence, concerned about AURMC's long-term financial viability. *Id.* at 47.

Plaintiff filed this action on March 7, 2024, claiming that Aldersgate, AUMRC, and members of their boards of directors as individuals, are liable for numerous alleged violations of federal and state law, including violations of (1) the federal Racketeer Influenced and Corrupt Organization Act ("RICO") under 18 U.S.C. § 1961-62, (2) North Carolina's Unfair Trade and Deceptive Practices Act under N.C.G.S. § 75-1, as well as (3) fraudulent misrepresentation or

---

[2] It is unclear from the record whether the semi-annual business meeting was Aldersgate's or AUMRC's.

omission. Plaintiff further seeks a declaratory judgment to pierce the corporate veil, a judgment declaring Aldersgate's actions on behalf of AUMRC to be null and void,[3] and an order requiring immediate disgorgement of his entire entrance fee with interest pursuant to N.C.G.S. § 58:64-70, along with other remedies.

Plaintiff alleges that the misrepresentation regarding the escrow of entrance fees and the other "material omissions" were made intentionally (or at least recklessly), and next asserts that AUMRC and Aldersgate conspired to perpetuate these false statements for the purpose of inducing prospective residents to pay large entrance fees so that the companies could then funnel the money into charitable endeavors and failed commercial projects. (Doc. No. 1 at 20-21, 25, 33). He does not allege that the individual Defendants benefitted financially, nor does he allege specific facts that support his allegation that the misrepresentation and "material omissions" were intentionally or recklessly made beyond attempting to link them with his larger allegation of a conspiracy. *Id.* at 28, 30.

With respect to his RICO claim, Plaintiff alleges that because 1) the misrepresentations that he relied on [regarding escrowing the refundable portion of the entrance fee] were made via phone and mail; 2) the mailed disclosure statement contained "material omissions" [including failing to state whether the entrance fee would be escrowed]; and 3) he and possibly others were induced to tender their entrance fees, Defendants have engaged in a pattern of racketeering activity that violates federal law.

---

[3] In his Opposition to the Motion to Dismiss, Plaintiff voluntarily waives the following in his prayer for relief: (A) judgment declaring that all decisions, corporate acts, contracts (including resident service agreements), letters of intent, land conveyances, pledges, mortgages, and all other corporate decisions or agreements of any kind foisted upon AUMRC by Defendants Pugh, Aldersgate, and its directors be declared *ultra vires* and null and void as a matter of law; and (B) court fees and costs of suit. (Doc. No. 1 at 37; Doc. No. 24 at 19).

Further, although the connection to his primary allegations of misrepresentation is somewhat unclear, Plaintiff alleges that the money coming in from entrance fees was poorly managed by AURMC and Aldersgate, funded failing real estate ventures such as "Aldersgate at Sharon" and "Generations at Shalom Park" (both of which were originally intended to be luxury retirement communities, and neither of which ended up being built), and allowed for Aldersgate to lease out some of its land for less than market value. *Id.* at 21-22, 35.

After receiving various extensions of time and a brief stay, Defendants filed their motion to dismiss the Complaint with prejudice on June 8, 2024, arguing that Plaintiff is simply a disgruntled former resident who lacks standing as to several claims, and failed to state a claim as to all his alleged causes of action. (*See* Doc. No. 20). With respect to RICO, Defendants specifically contend that Plaintiff presents no evidence of a "pattern" as required under RICO. *Id.* at 2, 10-14. The motion is now fully briefed and ripe for the Court's decision.

### III. DISCUSSION

Plaintiff filed this action in Federal court based on the Court's "federal question" jurisdiction, 28 U.S.C. § 1331. However, only one of the numerous allegations in Plaintiff's complaint invokes federal law. The remaining state law causes of action depend on the Court's supplemental jurisdiction under 28 U.S.C. § 1367. Thus, the Court first analyzes Plaintiff's RICO claim.

#### A. Federal RICO Claim

As discussed above, Plaintiff alleges that Defendants violated 18 U.S.C. § 1961-62, when an AURMC employee told him that the refundable portion of his entrance fee would be escrowed, and he was provided a state-mandated disclosure statement containing "material omissions." Doc. No. 1 at 24, 28, 30. It is undisputed that Aldersgate did not escrow the refundable portion of Plaintiff's entrance fee. In their Motion to Dismiss, Defendants primarily challenge Plaintiff's

7

RICO claim on the grounds that Plaintiff has not sufficiently pled a "pattern of racketeering activity" under RICO. Doc. No. 20-1 at 11-13. The Court agrees.

Congress has authorized both civil and criminal enforcement of alleged violations of RICO. 18 U.S.C. § 1964. RICO's civil provision provides a cause of action to "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." *Id.* at § 1964(c). The statute prohibits the use of income derived from "a pattern of racketeering activity" for the "establishment or operation" of "any enterprise" engaged in or affecting interstate or foreign commerce. *Id.* at § 1962(a). To state a RICO claim, a Plaintiff must allege (1) conduct [or predicate acts]; (2) of an enterprise; (3) through a pattern; (4) of racketeering. *See Morley v. Cohen*, 888 F.2d 1006, 1009 (4th Cir. 1989) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)); *see also, Rojas v. Delta Airlines, Inc.*, 425 F. Supp. 3d 524, 536 (D. Md. 2019).

A "pattern of racketeering activity" requires "at least two acts of racketeering activity." 18 U.S.C. § 1961(5). While a minimum of two predicate acts is required, two acts alone do not necessarily establish a pattern. *Sedima*, 473 U.S. at 496. To establish a pattern of racketeering activity, a Plaintiff must show that the predicate acts are related and that they "amount to or pose a threat of continued criminal activity." *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 549 (4th Cir. 2001) (quoting *H.J. Inc.* v. *Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989)).

"Continued" in this context can refer to either a closed period of repeated conduct or past conduct that inherently projects into the future, posing a threat of ongoing repetition. *H.J.*, 492 U.S. at 242. Closed-ended continuity may be demonstrated by "a series of related predicates extending over a substantial period of time." *Id*. However, predicate acts that span only a few weeks or months, without any threat of future criminal conduct, do not meet this requirement. *Id.*

8

Open-ended continuity, on the other hand, may be shown where the related predicates themselves pose a distinct threat of long-term racketeering activity. *US Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 318 (4th Cir. 2010).

Indeed, RICO's pattern of racketeering requirement is critically important because "[i]n providing a remedy of treble damages . . . Congress contemplated that only a party engaging in widespread fraud would be subject to such serious consequences." *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 683 (4th Cir. 1989). For this reason, RICO's remedies are not appropriate for "the ordinary run of commercial transactions." *Id. See also, ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 181 (4th Cir. 2002) (noting that the pattern requirement is "designed to prevent RICO's harsh sanctions . . . from being applied to garden-variety fraud schemes").

Mail and wire fraud are among the most charged predicate acts under RICO. Mail and wire fraud "have two essential elements: (1) the existence of a scheme to defraud and (2) the use of the mails or wire communication in furtherance of the scheme." *United States v. Curry*, 461 F.3d 452, 457 (4th Cir. 2006); *see also, Mitchell Tracey v. First Am. Title Ins. Co.*, 935 F. Supp. 2d 826, 845 (D. Md. 2013) ("A scheme to defraud means any deliberate plan of action or course of conduct by which someone intends to deceive or cheat another or by which someone intends to deprive another of something of value."); *United States v. Pasquantino*, 336 F.3d 321, 332 n.5 (4th Cir. 2003) ("Because the mail and wire fraud statutes share the same language in relevant part, we apply the same analysis to both offenses."). When mail and wire fraud are asserted as predicate acts in a civil RICO claim, each must be plead with particularity, pursuant to Rule 9(b). *MSP Recovery Claims, Series LLC v. Lundbeck LLC*, 664 F. Supp. 3d 635, 655 (E.D. Va. 2023) (quoting *Menasco,* 886 F.2d at 684).

Rule 9(b) requires that when "alleging fraud or mistake, a party must state with particularity the circumstances constituting [the] fraud or mistake." *Id.* Such circumstances include "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentations and what he obtained thereby." *Id.* (quoting *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219 (4th Cir. 2015)). "These facts are often 'referred to as the who, what, when, where, and how' of the alleged fraud." *Id.* (quoting *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008)) (citations omitted). Mere allegations of "fraud by hindsight" will not satisfy the requirements of Rule 9(b). *Id.* at 655-56 (quoting *Hillson Partners Ltd. P'ship v. Adage, Inc.*, 42 F.3d 204, 209 (4th Cir. 1994)).

"In cases involving . . . omissions of material facts . . . meeting Rule 9(b)'s particularity requirement will likely take a different form." *Chambers v. King Buick GMC, LLC*, 43 F. Supp. 3d 575, 586 (D. Md. 2014). *See also, Shaw v. Brown & Williamson Tobacco Corp.,* 973 F. Supp. 539, 552 (D. Md. 1997) (recognizing that an omission likely "cannot be described in terms of the time, place, and contents of the misrepresentation or the identity of the person making the misrepresentation" (internal quotations omitted)).

However, the Fourth Circuit is particularly "cautious about basing a RICO claim on predicate acts of mail and wire fraud," as most frauds typically involve the use of mail or wire at least twice. *Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000). RICO liability is thus reserved for "ongoing unlawful activities whose scope and persistence [pattern] pose a special threat to social well-being." *Menasco*, 886 F.2d at 684; *see H.J.*, 492 U.S. at 237-44, 250 (ongoing bribery, which spanned several years and aimed to influence public policy, demonstrated a threat of continued criminal conduct [and is a "pattern" under RICO]); *Morley,* 888 F.2d at 1009-11 (RICO pattern found in a fraudulent scheme lasting over five years and which

10

involved repeated misrepresentations to both induce investments in a coal mining venture and later leave investments in the scheme); *United States v. Frega*, 179 F.3d 793 (9th Cir. 1999) (ongoing scheme using mail fraud to influence judicial decisions in exchange for bribes [is more than garden variety fraud]).

Conversely, courts tend to reject RICO claims and are apt to find "garden variety" fraud when the alleged conduct involves a finite, short-term scheme, or a single transaction or victim, particularly if the criminal acts do not suggest an ongoing or future threat to social well-being. *See Menasco*, 886 F.2d at 685 (narrow [garden variety] fraud described when allegations include only a few parties and is confined to a single, finite transaction); *GE,* 247 F.3d at 549 (a single scheme to defraud potential investors over 17 months by misleading them into believing a company was thriving [when it was really a Ponzi scheme] did not constitute the long-term criminal conduct that Rico was intended to address); *Al-Abood*, 217 F.3d at 238 (mail and wire fraud do not rise to the level of a RICO violation where only one victim exists, even though the fraud spanned three discrete schemes over several years); *Vicom, Inc. v. Harbridge Merchant Serv., Inc.,* 20 F.3d 771, 782–84 (7th Cir. 1994) (finding no pattern where defendants engaged in fraud against thousands of merchants, but the fraud was designed to inflate the company's net worth and lasted only nine months); *Thompson v. Paasche,* 950 F.2d 306, 310-11 (6th Cir. 1991) (finding no pattern where the defendant's fraudulent scheme was made inherently short-lived by the limited number of lots that the defendant had to sell). *See also, Efron v. Embassy Suites (Puerto Rico), Inc*., 223 F.3d 12, 16-18 (1st Cir. 2000) (even repeated instances of mail and wire fraud do not violate RICO if they are part of a single, isolated dispute and do not involve ongoing or future criminal conduct). In short, courts generally limit the application of RICO to cases involving extensive, organized, and continuous fraud, rejecting efforts to turn basic fraud disputes into RICO claims.

11

Applying those principles here, the Court finds Plaintiff's allegations insufficient to plausibly violate RICO. There is but one defendant, alleging a single finite scheme, involving two phone calls and one document, spanning a three-month period. These facts (even if expanded to include unnamed other residents at indeterminate dates) do not demonstrate the continuity discussed in *Morley*, nor the expansive time period or potential for harm to social well-being discussed in *H.J. Morley*, 888 F.2d at 1009-11; *H.J.*, 492 U.S. at 237-44, 250.

The facts do, however, demonstrate what makes them "garden variety" fraud allegations. As in *Al-Abood*, there is but one victim for whom any specific allegations are made. 217 F.3d at 238. As in *GE*, there is but one alleged scheme with the specified facts covering only a short period of time. 247 F.3d at 549. As in *Thompson*, any scheme is necessarily limited by the number of rooms and residences available, thus the risk of harm to social well-being is mitigated. 950 F.2d at 310-11. Finally, like *Efron*, there is no ongoing or future criminal conduct threatened, because the Aldersgate / AUMRC CEO reported retraining her staff, and the facility is now under the direct supervision of the North Carolina Department of Insurance. 223 F.3d at 16-18; Doc. No. 1 at 46. When considered together, the facts as alleged do not support a RICO claim.

Again, although the Court must "accept the well-pled allegations of the complaint as true [in a motion to dismiss]," the Court need not accept "legal conclusions couched as factual allegations, or conclusory factual allegations devoid of any reference to actual events." *Luy v. Baltimore Police Dep't*, 326 F. Supp. 2d 682, 689 (D. Md. 2004), *aff'd*, 120 F. App'x 465 (4th Cir. 2005) (quoting *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997); *Papasan v. Allain,* 478 U.S. 265, 286 (1986)). However, even if the Court accepts that failure of the disclosure form to indicate how entrance fees would be handled constituted a "material omission," Plaintiff provides no facts to suggest that either AUMRC or Aldersgate were aware of, directed the dissemination

12

of, or ratified any inaccurate disclosure statement. He conclusorily suggests that the same form was used over the course of eight years but has provided no facts to corroborate his assertion. Doc. No. 24 at 9-10. Similarly, while he has stated that "several" residents expressed frustration during a January 2024 meeting, indicating that they too may have been told a portion of their entrance fee would be escrowed, he has not provided any facts to suggest that these statements occurred over a specific time period, much less eight years.

So, during the summer of 2022, at least one person [Plaintiff] believed the disclosure form contained a "material misrepresentation." And there is a three-month period in 2022 when two staff people allegedly represented or failed to contradict to a single person [Plaintiff] that a portion of the entrance fees would be escrowed. Taken together, this does not evince the required two predicate acts needed, nor does it demonstrate a pattern for purposes of RICO. Finally, there is no potential for this issue to continue, given that it involves one company and a small, closed group of residents who at some point resided at AUMRC. Doc. No. 1 at 46. Further, AURMC is now under the direct supervision of the North Carolina Department of Insurance. *Id.*

In sum, what Plaintiff alleges is that a single retirement community misrepresented a single fact related to whether the refundable portion of their entrance fees was escrowed. Plaintiff also alleges (in little detail) that others may have been similarly misinformed. Without dismissing the seriousness of these allegations, this is, if proven, a paradigm example of "garden variety" fraud, not a criminal enterprise, nor a pattern of racketeering. Rather, this is a single discrete example of commercial misrepresentation that allegedly injured Plaintiff and perhaps others. Further, it is impossible to imagine a commercial transaction of this nature that does not, in part, utilize phone or mail communications. Therefore, those means are far from dispositive, as the Fourth Circuit has repeatedly explained. As such, this claim will be dismissed.

B.  State Law Claims

In addition to his federal claim, Plaintiff asserts state law claims under North Carolina's Unfair and Deceptive Trade Practices Act and common law. However, in the absence of a viable federal claim, the federal question jurisdiction on which this action was removed is lacking and the court may decline to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims. *See* 28 U.S.C. § 1367(c)(3); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 394 (4th Cir. 2012); *Mann v. Power Home Solar, LLC*, No. 521CV00166KDBDSC, 2022 WL 602196, at *2 (W.D.N.C. Feb. 28, 2022). In the exercise of its discretion, the Court will decline to consider Plaintiff's state law claims, leaving the merits of those claims to be determined in state court. Accordingly, Plaintiff's remaining claims will be dismissed without prejudice (or indeed any consideration of their merits).

## IV.  ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendants' Motion to Dismiss (Doc. No. 20) is **GRANTED** on the merits as to Plaintiff's RICO claim and **GRANTED** as to Plaintiff's remaining claims without prejudice to permit Plaintiff to pursue those claims in state court; and
2. The Clerk is directed to close this matter in accordance with this Order.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: October 7, 2024

Kenneth D. Bell
United States District Judge

14

Case 3:24-cv-00288-KDB-SCR    Document 28    Filed 10/07/24    Page 14 of 14